1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11

12  MUSSETTER DISTRIBUTING, INC.,
    a California corporation,        NO. CIV. 09-1442 WBS EFB
13
             Plaintiff,
14                                    MEMORANDUM AND ORDER RE:
       v.                             MOTION TO TRANSFER VENUE AND
15                                    MOTION FOR STAY OF ARBITRATION
    DBI BEVERAGE INC., a Tennessee    OR PRELIMINARY INJUNCTION
16  corporation,

17           Defendant._____

18                         ----oo0oo----

19

20       Plaintiff Mussetter Distributing Inc. ("Mussetter")

21  brought this action in state court against defendant DBI Beverage

22  Inc. ("DBI") to obtain declaratory relief regarding the validity

23  and application of California Business and Professions Code

24  section 25000.2.  Having removed the case to federal court,

25  defendant now moves to transfer venue to the Northern District of

26  California (San Jose Division), while plaintiff moves for a stay

27  of arbitration or a preliminary injunction to prevent the

28  application of section 25000.2 before plaintiff's Complaint for

                                   1

1  declaratory relief can be adjudicated.

2  I.   Factual and Procedural Background

3  _____   Plaintiff was founded in 1976 to market and distribute
4  beverages in Placer, Nevada, Yuba, and Sierra Counties in
5  northern California.  (Mussetter Decl. ¶ 2.)  The business has
6  subsequently grown from sales of approximately 20,000 cases per
7  year to over 600,000 cases per year, and plaintiff currently has
8  530 retail accounts, 30 employees, and a 38,000 square-foot
9  facility located in Auburn, California.  (Id.)  Since its
10  founding, plaintiff has distributed beverages sold by Miller
11  Brewing Company ("Miller"), and plaintiff's current distribution
12  agreement with Miller is effective as of January 1, 1999.  (Id.
13  Ex. A. ("Agreement").)

14       On July 1, 2008, Miller and Coors Brewing Company
15  ("Coors") formed a joint venture called MillerCoors L.L.C.
16  ("MillerCoors"), a Delaware limited liability company.  (See
17  Slater Decl. Ex. A at 1, ¶¶ 4-6.)  Thereafter, in a letter dated
18  September 2, 2008, plaintiff was informed that MillerCoors had
19  been assigned Miller's rights under the distribution agreement.
20  (Mussetter Decl. Ex. B at 1.)  That letter continued, "[P]ursuant
21  to Section 25000.2 of the California Business and Professions
22  Code, MillerCoors intends to terminate your Miller Brewing
23  Company Distributor Agreement.  As representatives from
24  MillerCoors recently explained to you, we have designated DBI
25  Beverage as the distributor for the Brands in your existing
26  territory."  (Id.)

27       Section 25000.2 codifies California Senate Bill 574,
28  which was signed into law on October 8, 2007.  As summarized in

2

the bill's legislative counsel's digest, the new law provides:

> [I]f a successor beer manufacturer . . . acquires the
> rights to manufacture, import, or distribute a brand or
> brands of beer, and then cancels the distribution rights
> of an existing wholesaler . . . the successor beer
> manufacturer shall notify the existing beer wholesaler of
> his or her intent to cancel those rights. . . . [T]he
> successor beer manufacturer's designee . . . and the
> existing beer wholesaler shall negotiate in good faith to
> determine the fair market value . . . of the distribution
> rights and require the designee to compensate the
> existing beer wholesaler in the agreed amount . . . , or
> if they are unable to agree . . . , shall engage in
> arbitration subject to specified conditions . . . .

Defendant DBI apparently had difficulties negotiating the transfer of plaintiff's distribution rights and, on October 17, 2008, filed a demand for arbitration with Judicial Arbitration and Mediation Services Inc. ("JAMS"). (Opp'n Stay & Prelim. Injunct. 4:8-9; Mussetter Decl. Ex. D.)   JAMS responded to the demand for arbitration on November 10, 2008, and requested "[e]vidence of JAMS'[s] jurisdiction to hear the matter, e.g., either a contract clause naming JAMS, a stipulation signed by all parties, or an Order compelling the parties to arbitrate or mediate at JAMS."   (Mussetter Decl. Ex. E at 1.)

On February 6, 2009, defendant and MillerCoors brought a petition to compel arbitration in San Mateo Superior Court against plaintiff and two other existing Miller and Coors distributors, Maita Distributors Inc. ("Maita") and Elyxir Distributing L.L.C. ("Elyxir").   (Slater Decl. ¶ 10.) Defendant's counsel submits that "DBI was forced to bring the Petition because each Distributor refused to arbitrate and JAMS declined to continue with arbitration without a court order or Distributors' consent."   (Id. ¶ 4.)   Plaintiff filed an opposition to the petition on April 20, 2009, asserting that (1)

3

1  the court should not compel arbitration because section 25000.2

2  sets out an arbitration scheme separate from the California

3  Arbitration Act ("CAA"), (2) arbitration was precluded because

4  defendant's demand for arbitration was untimely, (3) arbitration

5  was precluded because MillerCoors was not a "successor beer

6  manufacturer" under section 25000.2, and (4) retroactive

7  application of section 25000.2 was unconstitutional under both

8  the California and United States Constitutions.  (See id. Ex. B.)

9  Plaintiff, Maita, and Elyxir also jointly filed a cross-complaint

10  for declaratory relief regarding the aforementioned arguments.

11  (See id. Ex. C.)

12          On April 30, 2009, the San Mateo Superior Court issued

13  a tentative order denying the petition to compel arbitration.

14  (See Mussetter Decl. Exs. F ("San Mateo Order"), G ("San Mateo

15  Trans."); Opp'n Stay & Prelim. Injunct. 5:17-22.)  The tentative

16  order explained that the court could not compel arbitration

17  because the CAA "applies only to contractual arbitration" and

18  "there is no contract between the successor distributors and the

19  existing distributors."  (San Mateo Order 2:5-10.)  The tentative

20  order further provided,

21          [DBI and MillerCoor's] proper course of action is to
           proceed to arbitration with or without [the existing
22          distributors].  Pursuant to [section 25000.2(f)(9)], if
           the [existing distributors] fail to participate in
23          arbitration, the arbitrator may proceed in their absence.
           Section 25000.2 contains no requirement of a Court order
24          before arbitration may proceed with one party absent.

25  (Id. at 2:11-14.)

26          At the request of the existing distributors, the San

27  Mateo Superior Court held a hearing on May 1, 2009, before its

28  tentative order became final.  (See San Mateo Trans. 3:23-26.)

4

1  At the hearing, counsel for the existing distributors argued

2  that, although the court properly denied the petition to compel

3  arbitration, its order should not refer to MillerCoors and DBI's

4  "proper course of action," as this would be "an interpretation of

5  the statute" or an "advisory opinion." (Id. at 4:17-22.)  In

6  response, the San Mateo Superior Court clarified,

7  >      I'm not making any specific finding . . . other than the
   >      procedure of 25000.2 is the vehicle that should be used.
8  >      . . . I'm not making any finding with regard to the 40
   >      days or any of the rest of the requirements of 25000.2
9  >      for the arbitration provisions or any other provisions of
   >      that statute.
10

11 (Id. at 5:14-24.)  Nonetheless, the court ultimately declined to

12 modify its tentative order, which became final on May 5, 2009.

13 (See id. at 13:24-25; San Mateo Order 2:15.)

14         After the hearing, plaintiff and the other existing

15 distributors in the San Mateo litigation voluntarily dismissed

16 their cross-complaint without prejudice and then filed separate

17 complaints in the superior courts of their respective counties on

18 May 6, 2009.  Specifically, Maita filed a complaint in Santa

19 Clara County Superior Court, Elyxir filed a complaint in Santa

20 Cruz County Superior Court, and plaintiff filed a complaint in

21 Placer County Superior Court.  (See Slater Decl. Exs. E, F, G.)

22 The complaints, while not identical, are substantially similar

23 with respect to their factual bases, legal theories, and relief

24 sought.  DBI subsequently removed the actions pending in Santa

25 Clara and Santa Cruz Counties to the District Court for the

26 Northern District of California (San Jose Division), where they

27 have both been assigned to Judge Ronald M. Whyte.  (See id. ¶

28 17.)

1    Over plaintiff's objection, JAMS initiated arbitration

2  proceedings between plaintiff and DBI on May 8, 2009. (Mussetter

3  Decl. ¶ 13; id. Ex. H.)  Plaintiff proceeded to file an ex parte

4  application for a temporary restraining order, as well as a

5  motion to stay the arbitration or for a preliminary injunction,

6  with the Placer County Superior Court. (Id. ¶ 14.)  The Placer

7  County Superior Court denied the ex parte application for a

8  temporary restraining order on May 14, 2009, and scheduled a

9  hearing for plaintiff's motion for a stay or preliminary

10 injunction on August 4, 2009. (Id.)  Before that motion could be

11 heard, however, defendant removed the action to this court on May

12 24, 2009. (See Docket No. 1.)

13    Presently before the court are defendant's motion to

14 transfer venue to the Northern District of California (San Jose

15 Division) and plaintiff's motion to stay arbitration or for a

16 preliminary injunction.

17 II.   Discussion

18    "For the convenience of parties and witnesses, in the

19 interest of justice, a district court may transfer any civil

20 action to any other district or division where it might have been

21 brought."  28 U.S.C. § 1404(a).[1]  Under § 1404(a), a district

22 court "has discretion to adjudicate motions for transfer

23 according to an individualized, case-by-case consideration of

24

25    [1]    The parties do not dispute that this case could have
26 been brought in the Northern District of California, as defendant
   is subject to personal jurisdiction in that district.  See 28
27 U.S.C. 1391(c) ("For purposes of venue . . . , a defendant that
   is a corporation shall be deemed to reside in any judicial
28 district in which it is subject to personal jurisdiction at the
   time the action is commenced.").

1  convenience and fairness." Jones v. GNC Franchising, Inc., 211

2  F.3d 495, 498 (9th Cir. 2000) (quoting Stewart Org. v. Ricoh

3  Corp., 487 U.S. 22, 29 (1988)) (internal quotation marks

4  omitted).  To undertake this analysis of "convenience" and the

5  "interests of injustice," a district court weighs "multiple

6  factors," including the plaintiff's choice of forum, the contacts

7  relating to the plaintiff's cause of action in the chosen forum,

8  the convenience of witnesses, and the ease of access to sources

9  of proof.[2]  Id. at 498-99; see DeFazio v. Hollister Employee

10  Share Ownership Trust, 406 F. Supp. 2d 1085, 1088-89 (E.D. Cal.

11  2005) (Karlton, J.).

12      "No single factor is dispositive and a district court

13  has broad discretion to adjudicate motions for transfer on a

14  case-by-case basis." Ctr. for Biological Diversity v.

15  Kempthorne, No. 08-1339, 2008 WL 4543043, at *2 (N.D. Cal. Oct.

16  10, 2008) (citing Stewart Org. Inc. v. Ricoh Corp., 487 U.S. 22,

17  29 (1988); Sparling v. Hoffman Constr. Co., Inc., 964 F.2d 635,

18  639 (9th Cir. 1988)).  Ultimately, the party moving for a

19  transfer of venue under § 1404(a) "bears the burden to show that

20  another forum is more convenient and serves the interest of

21  justice." F.T.C. v. Watson Pharm., Inc., 611 F. Supp. 2d 1081,

22  1086 (C.D. Cal. 2009) (citing GNC Franchising, 211 F.3d at 499);

23  accord DeFazio, 406 F. Supp. 2d at 498-99.

24  _____

25      [2]  Other factors considered by courts include the location
where relevant agreements were negotiated and executed, the state
26  that is most familiar with the governing law, the differences in
the costs of litigation in the two forums, the availability of
27  compulsory process to compel attendance of unwilling non-party
witnesses, the presence of a forum selection clause, and the
28  relevant public policy of the forum state.  GNC Franchising, 211
F.3d at 498-99.

1    Defendant's primary argument in support of its motion

2    to transfer venue avails the "interests of justice" aspect of the

3    § 1404(a) analysis.  Specifically, defendant argues that transfer

4    of this case to the Northern District will promote efficiency in

5    light of the two similar actions in that court brought by Maita

6    and Elyxir.[3]  (Defs.' Mem. Supp. Mot. Transfer Venue 6:16-7:10.)

7         "An important consideration in determining whether the

8    interests of justice dictate a transfer of venue is the pendency

9    of a related case in the transferee forum."  Am. Canine Found. v.

10   Sun, No. 06-654, 2006 WL 2092614, at *3 (E.D. Cal. July 27, 2006)

11   (Karlton, J.) (citing A.J. Indus., Inc. v. U.S. Dist. Court for

12   the Cent. Dist. of Cal., 503 F.2d 384, 389 (9th Cir. 1974)); see

13   Williams v. Bowman, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001)

14   (listing "feasibility of consolidation of other claims" as a

15   factor relevant to the "interests of justice").  Indeed, the

16   Supreme Court and the Ninth Circuit have long recognized that

17   "[t]o permit a situation in which two cases involving precisely

18   the same issues are simultaneously pending in different District

19   Courts leads to the wastefulness of time, energy and money that §

20   1404(a) was designed to prevent."  Cont'l Grain Co. v. The FBL-

21   585, 364 U.S. 19, 26 (1960); see A.J. Indus., Inc., 503 F.2d at

22   389 ("[T]he pendency of an action in another district is

23   _____

24        [3]    At oral argument, plaintiff represented that the action
     prosecuted by Elyxir in the Northern District had settled.
25   Because a notice of settlement does not appear on the Northern
     District's docket at this time, the court will continue to
26   consider that action as pending.  As the court's analysis makes
     clear, however, the presence of two pending actions in the
27   Northern District rather than one action does not play a decisive
     role in the court's resolution of defendant's motion to transfer
28   venue.

important because of the positive effects it might have in
possible consolidation of discovery and convenience to witnesses
and parties.").

Here, there is substantial overlap between the claims
in the Northern District actions and those in the instant case.
The complaints--all filed the same day and signed by the same
counsel--assert claims against DBI and track the allegations of
the cross-complaint filed jointly by the existing distributors in
the San Mateo litigation.  The plaintiffs seek declarations that
section 25000.2 of the California Business and Professions Code
violates the California and United States Constitutions and that,
even if section 25000.2 is constitutional, MillerCoors does not
qualify as a "successor beer manufacturer" entitled to cancel the
existing distributors' contracts in favor of DBI.[4]  (See Notice
of Removal Ex. A (Compl.) ¶ 12; Slater Decl. Ex. G ¶ 13; id. Ex.
H ¶ 12.)  Despite some isolated differences involving whether DBI
timely initiated arbitration or engaged in good faith
negotiations before doing so, the core issues in these actions
will likely involve substantially similar, intensive inquiries.

In addition to the "possible consolidation of
discovery" and the conservation of "time, energy and money,"
centralizing the adjudication of similar cases will also "avoid
the possibility of inconsistent judgments."  In re
Genesisintermedia, Inc. Sec. Litig., No. 01-9024, 2003 WL
25667662, at *4 (C.D. Cal. June 12, 2003); see Argonaut Ins. Co.

---

[4]     Both plaintiff and Elyxir also seek a declaration that
the time limits of section 25000.2 are conditions precedent to
the right to arbitrate.  (See Compl. ¶ 12; Slater Decl. Ex. G ¶
13.)

v. Mac Arthur Co., No. 12-3878, 2002 WL 145400, at *4 (N.D. Cal. Jan. 18, 2002) ("The best way to ensure consistency is to prevent related issues from being litigated in two separate venues."). As plaintiff acknowledges, litigation regarding the application and validity of section 25000.2 has caused uncertainty as to the rights and obligations of these parties and those who are similarly situated.  (See Mussetter Decl. ¶ 17.)  This uncertainty would only be exacerbated by inconsistent district court rulings on the statute.  Such uncertainty, moreover, is particularly undesirable in light of plaintiff's challenge to the validity of a state law, thus implicating the "delicate balance" between the federal and state governments.  Gregory v. Ashcroft, 501 U.S. 452, 460 (1991).

Ultimately, the adjudication of these common questions in a single forum will promote judicial economy, conserve the parties' resources, and avoid inconsistent judgments--all in furtherance of the "interests of justice."  Thus, the pendency of related cases in the Northern District and the feasibility of consolidation weigh heavily in favor of transfer.  See Am. Canine Found., 2006 WL 2092614, at *3 (transferring a case to another district so that similar cases challenging the constitutionality of a California statute and municipal ordinance could be tried in the same district); see also, e.g., Cardoza v. T-Mobile USA Inc., No. 08-5120, 2009 WL 723843, at *6 (N.D. Cal. Mar. 18, 2009); Bomanite Corp. v. Newlook Int'l, Inc., No. 07-1640, 2008 WL 1767037, at *11 (E.D. Cal. Apr. 16, 2008) (Wanger, J.); Alexander v. Franklin Res., Inc., No. 06-7121, 2007 WL 518859, at *3 (N.D. Cal. Feb. 14, 2007); Jolly v. Purdue Pharma L.P., No. 05-1452,

1   2005 WL 2439197, at *2 (S.D. Cal. Sept. 28, 2005).[5]

2          In opposition to defendant's motion to transfer venue,

3   plaintiff correctly observes that "[i]n this circuit, a

4   plaintiff's choice of forum is generally granted great weight,"

5   particularly where the "operative facts" of a case have a

6   "material connection with the chosen forum." DeFazio, 406 F.

7   Supp. 2d at 1089 (citing Lou v. Belzberg, 834 F.2d at 739 (9th

8   Cir. 1987)).  Here, it is undisputed that plaintiff's principal

9   place of business is located in Placer County in the Eastern

10  District of California.  (See Hursh Decl. ¶ 2.)  To the extent

11  that the facts alleged in the Complaint pertain to any "activity"

12  or "conduct" occurring in a particular forum, such facts refer to

13  the distribution of Miller products in the counties of Placer,

14  Nevada, Yuba, and Sierra (see Mussetter Decl. ¶ 2), which are

15  also located in the Eastern District of California.

16          Nonetheless, while a defendant "must make a strong

17  showing of inconvenience to warrant upsetting the plaintiff's

18  choice of forum," Decker Coal Co. v. Commonwealth Edison Co., 805

19  F.2d 834, 843 (9th Cir. 1986), this premise does not implicate

20

21          [5]   The transferee court ultimately retains discretion over
    whether and in what manner these actions may be joined or
22  consolidated--in whole or in part--for trial, discovery, or other
    proceedings.  See A.J. Indus., Inc., 503 F.2d at 389 (refusing to
23  require that the transferor court determine the ultimate
    consolidation of related cases when transferring a case based
24  upon the existence of a pending, related action in the transferee
    court).  See generally Hopkins v. Dow Corning Corp., Nos. 88-4703
25  et seq., 1992 WL 176560, at *1 (N.D. Cal. May 27, 1992)
    (explaining that the "determination of whether to consolidate in
26  whole or in part rests in the trial court's sound discretion"
    (citing Investors Research Co. v. U.S. Dist. Court for the Cent.
27  Dist. of Cal., 877 F.2d 777 (9th Cir. 1989))); Fed. R. Civ. P.
    42(a) (stating that a district court may "join for hearing or
28  trial any or all matters at issue" in actions involving common
    questions of law or fact).

the court's power to transfer an action where the interests of justice so require.[6]   See generally Madani v. Shell Oil Co., No. 07-4296, 2008 WL 268986, at *2 (N.D. Cal. Jan. 30, 2008) ("The question of which forum will better serve the interest of justice is of predominant importance on the question of transfer, and the factors involving convenience of parties and witnesses are in fact subordinate." (quoting Wireless Consumers Alliance v. T-Mobile USA, Inc., No. 03-3711, 2003 WL 22387598, at *4 (N.D. Cal. Oct. 14, 2003))); accord Amazon.com v. Cendant Corp., 404 F. Supp. 2d 1256, 1261 (W.D. Wash. 2005).   Furthermore, defendant's arguments supporting transfer arguably promote the mutual "convenience" of the parties through the efficient use of their time and resources, and plaintiff provides scant indication that a transfer from Sacramento to San Jose would in fact be unduly burdensome.   Rather, plaintiff solely asserts that all of its "principals and its employees are located in Placer County and for them to travel over one hundred miles to San Jose will be disruptive to the business" and that "[a]ll of [plaintiff's] books and records are located in Auburn."   (Opp'n Transfer Venue 7:23-8:1.)

To be sure, San Jose is farther from Placer County than Sacramento, but the added incremental inconvenience is not considerable.   Furthermore, although plaintiff's principals,

---

[6]   To overcome the "great weight" accorded to plaintiff's choice of forum, defendant also asserts that plaintiff is engaging in forum shopping.  (Mot. Transfer 8:3-9:13.)   While the procedural jockeying in this case may indeed raise the spectre of forum shopping (see, e.g., Slater Decl. Ex. H at 1:27-28), the court ultimately need not impugn plaintiff's motives in order to resolve this motion.

1  employees, and documents are located in Placer County, the

2  allegations in the Complaint do not indicate that these persons

3  and documents will be necessary in litigating the action.

4  Indeed, plaintiff has not specifically identified any witness

5  that would be required to travel from Placer County to San Jose

6  in order to participate in discovery.  This is not surprising,

7  for the Complaint presents predominantly legal questions

8  regarding the proper interpretation of section 25000.2 and

9  whether its provisions violate the California or United States

10 Constitutions.  (See Compl 5:19-23.)  Although plaintiff's

11 allegation that defendant is not a "successor beer manufacturer"

12 under the statute may require additional discovery from defendant

13 (see id. at 5:15-18); see also Beverage Distribs., Inc. v. Miller

14 Brewing Co., Nos. 08-827 et seq., 2009 WL 1542730, at *4-7 (S.D.

15 Ohio June 2, 2009), this claim does not involve plaintiff's

16 principals, employees, or documents.

17       Ultimately, to carry its burden under § 1404(a),

18 defendant has demonstrated that the interests of justice favor

19 transferring this action to the Northern District.  These

20 considerations weigh heavily against plaintiff's choice of forum,

21 particularly since any inconvenience incident to transfer appears

22 to be negligible.  Accordingly, the court will grant defendant's

23 motion to transfer venue.

24       IT IS THEREFORE ORDERED that defendant's motion to

25 transfer venue be, and the same hereby is, GRANTED.  Plaintiff's

26 motions for a stay of arbitration or preliminary injunction

27 (Docket No. 8) and MillerCoors' motion to intervene (id. No. 13)

28 are VACATED without prejudice to such motions being properly

renoticed in the District Court for the Northern District of
California (San Jose Division).  The clerk shall transmit the
file to the clerk of that court.

DATED:  July 7, 2009

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

14